UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANUEL DE JESUS DIAZ,<br><br>            Petitioner,<br><br>v.<br><br>MINGA WOFFORD Facility Administrator (Warden), Golden State Annex, et. al,<br><br>            Respondents. | Case No. 1:25-CV-01079 JLT EPG<br><br>ORDER GRANTING PRELIMINARY INJUNCTION[1]<br><br>(Doc. 6) |

    Manuel De Jesus Diaz, a native of El Salvador, first came to the United States in 2005 by unlawfully wading across the Rio Grande River near Eagle Pass, Texas. (Doc. 18-1 at 8.) He was apprehended in that vicinity and taken into custody. (*Id*.) He admitted to being a national of El Salvador and to being unlawfully present in the Unted States. (*Id*.) The respondents assert that on September 23, 2005, Mr. Diaz was ordered removed from the United States by a final order of removal issued by an immigration judge (IJ), though they have not produced a copy of the order. (*Id*. at 10.) On December 5, 2005, Mr. Diaz voluntary departed the United States. (*Id.*)

    On April 9, 2019, Mr. Diaz was encountered by a Border Patrol Agent in the Rio Grande Valley, Texas Border Patrol Sector. (*Id*. at 6.) He was detained and transported to McAllen,

---

[1] Upon the agreement of the parties, the Court converts the motion for temporary restraining order into one for preliminary injunction. Respondents had notice, opportunity to respond and be heard. Additional briefing is not required and the standard for a TRO and a preliminary injunction is the same. As such, given the nature of the relief granted by this order and to allow Respondents to appeal should they choose, the Court converts this to a Motion for Preliminary Injunction.

Texas, where he was later "processed for Reinstatement of Prior Order of Removal" (*id*. at 7) pursuant to 8 U.S.C. § 1231(a)(5). On April 9, 2019, the Department of Homeland security issued him an "I-871" Notice of Intent/Decision to Reinstate Prior Order on April 9, 2019, indicating that DHS determined him to be subject to § 1231(a)(5). (*Id*. at 10.) At that time, Mr. Diaz apparently did not make a claim of fear or persecution if returned to his country of citizenship. (*Id*. at 7.)

Notwithstanding the apparent reinstatement of the prior removal order, the very next day, on April 10, 2019, Mr. Diaz was released on recognizance pursuant to an order of supervision due to "lack of space." (*Id*. at 12–15 (Form I-220B[2]).) Pursuant to 8 U.S.C. § 1231(a)(6)[3], which provides DHS with discretion to release an alien subject to a removal order, immigration officials necessarily determined that Petitioner did not present a risk of flight or danger to the community. *See also* 8 C.F.R. § 241.4(d)(1)(allowing for release if the alien "will not pose a danger to the community or to the safety of other persons or to property or a significant risk of flight pending such alien's removal from the United States"). The Form I-220B issued on April 10, 2019 ordered him to appear in person to the DHS office in San Francisco on April 19, 2019. (Doc. 18-1 at 12.) Mr. Diaz's "Personal Report Record" indicates he appeared for regular, in-person appointments with an immigration officer for the five years that have passed since then. (*Id*. at 13.)

In August 2024, USCIS provided Mr. Diaz with employment authorization. (Doc. 1, ¶ 4; Doc. 1-2 at 22.) Mr. Diaz has ben employed for the past five years at an auto repair shop in Belmont, California. (Doc. 6-1 at 25–25.) The owners of that business have submitted reference letters praising Mr. Diaz for his work ethic, skill, and personal character. (*E.g., id*. at 25 ("He deserves to be here, continuing to work, support his loved ones, and live a peaceful, productive

---

[2] The Court takes judicial notice that, according to the U.S. Citizenship and Immigration Services website, this form is issued "to aliens who have a final order of removal but have not been removed from the United States." Available at https://www.uscis.gov/save/current-user-agencies/commonly-used-immigration-documents (last visited Sept. 3, 2025).

[3] 8 U.S.C. § 1231(a)(6) provides: "An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)."

2

life."). He has also been an active participant in his church community, as evidenced by a reference letter from his minister. (Doc. 6-3 at 27.) The Court also is in receipt of a letter of reference from a Community Outreach Officer with the California Highway Patrol, who praises Mr. Diaz for his moral character and work ethic. (*Id*. at 24.)

In August 2024, Mr. Diaz's wife submitted an asylum application, naming Mr. Diaz and their three children (aged 11, 13, and 17 as of the date of this Order) as derivative applicants. (Doc. 1-2 at 18–20.)

On August 8, 2025, at his most recent in-person check in, Mr. Diaz was detained. (Doc. 1, ¶ 1.) According to Respondents, the detention was effectuated pursuant to an Order to Detain or Release issued that same day, though the copy of the form presented to the Court is unsigned and does not reflect any information about its execution. (Doc. 18-1 at 17.) The Declaration of Deportation Officer Alfonso Sanchez submitted with Respondents' opposition to the pending motion for injunctive relief indicates that Mr. Diaz is being detained pursuant to 8 U.S.C. § 1231(a)(6).[4] (Doc. 18-1 at 6.)

According to the Form I-831 prepared on August 8, 2025, Mr. Diaz is subject to a Final order of Removal dated September 23, 2023, and has a "Pending I-589," which is an "Application for Asylum and for Withholding of Removal,"[5] which may be a reference to the I-589 application filed by his wife. (*Id*. at 7.) DHS determined Mr. Diaz was to "remain in custody pending an Asylum Officer interview." (*Id*.) Also, according to Respondents, there are "currently no pending immigration proceedings against the Petitioner" and he is not in Expedited Removal Proceedings pursuant to 8 U.S.C. § 1225. (Doc. 18 at 3.) It is undisputed that he has no criminal history whatsoever. (*See* Doc. 1-1, ¶ 7; Doc. 18-1 at 6.)

Mr. Diaz has also presented letters from his wife, two of his children, and several friends. (Doc. 1-2 at 33–37.) His wife describes how the family is struggling in the absence of their "family's foundation" who "wakes up every day thinking of [them] first, and making sure there is food on the table." (*Id*. at 33.) His son indicates he is having trouble concentrating at school, (*id*.

---

[4] *See supra* note 3.
[5] *See* https://www.uscis.gov/i-589 (last visited Sept. 3, 2025),

3

at 35), his daughter expresses sadness and loneliness (*id*. at 36), and his friends applaud his generosity, kindness, and compassion (*id*. at 34, 37).

On August 26, 2025, Mr. Diaz filed a petition for writ of habeas corpus alleging that his detention constitutes a violation of the Fifth Amendment's right to substantive and procedural due process. (Doc. 1, ¶¶ 37–41 & p. 20.) He also advances Fourth Amendment and Administrative Procedure Act (APA) claims. (*Id*. at 18–19.) He seeks immediate release from custody; a declaration of the violation of his rights under the Fifth and Fourth Amendments, as well as the APA; a declaration that Respondents' failure to conduct a reasonable fear interview violates his Due Process rights; an injunction prohibiting his transfer away from this District or deportation pending the conclusion of these proceedings; an injunction against his re-detention without a pre-deprivation custody hearing "before a neutral arbiter in which the government bears the burden of proving, by clear and convincing evidence, that Petitioner is a flight risk or danger to the community"; an order precluding Respondents from placing Petitioner in expedited removal proceedings or removing him "except based on a final, executable removal order issued through Section 240 removal proceedings"; and for costs and attorney's fees. (*Id*. at 20–21.)

On the same day, he also filed an ex parte motion for a temporary restraining order. (Doc 6.) In that motion, he seeks "immediate release pending adjudication of this action; or, in the alternative, ordering immediate release and requiring a custody hearing within 14 days at which the government bears the clear-and-convincing burden to establish danger or flight risk." (*Id*. at 3.) Mr. Diaz further asks the Court to "enjoin any transfer or removal that would defeat this Court's jurisdiction and to prohibit Respondents from placing or maintaining him in expedited removal while this habeas case is pending, in light of his documented two-plus years of U.S. presence and prior parole." (*Id*.)

Respondents oppose the issuance of preliminary injunctive relief and maintain that Petitioner may be detained "at any time" pursuant to his reinstated removal order and 8 U.S.C. § 1231(a)(5). (Doc. 18 at 2.) Respondents concede that "Petitioner is not in the formally designated Expedited Removal Proceedings noted in 8 U.S.C. § 1225 and 8 C.F.R. § 235.3, but nonetheless insists that 8 U.S.C. § 1231(a)(5) empowers his "expedited" removal in more general

terms. (*Id*. at 6.)

For the reasons set forth below, the Court converts the request for a temporary restraining order into a request for a preliminary injunction and **GRANTS** the motion.

## II.    LEGAL BACKGROUND

### A.    Reinstated Removal

"The Immigration and Nationality Act (INA) provides for the expedited removal of an alien who was previously subject to a removal order but returned illegally to the United States." *Andrade-Garcia v. Lynch*, 828 F.3d 829, 831 (9th Cir. 2016) (citing 8 U.S.C. § 1231(a)(5)). Pursuant to § 1231(a)(5), "[i]f the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry."

Though DHS has discretion to initiate new removal proceedings, rather than reinstate a prior order of removal, *Morales de Soto v. Lynch*, 824 F.3d 822, 825 (9th Cir. 2016), Respondents claim they elected to reinstate Mr. Diaz's 2005 order of removal in 2019. (Doc. 18-1 at 10.) However, as noted in the Reply, 8 CFR § 241.8(a) sets forth the procedures that must be followed before that can occur. This section requires the immigration officer to obtain a copy of the order of removal, then verify whether the person, in fact, is the person who was subject to the prior removal order and then determine whether the person unlawfully reentered the country.  As pointed out in the reply, there is no evidence that an immigration officer obtained a copy of the claimed removal order. Indeed, the government's evidence refers to two orders, one issued in 2005, and another issued in 2023 (*compare* Doc. 18-1 at 7 and Doc. 18-1 at 10). Thus, it is unclear whether the immigration officer obtained a copy of either order.

Assuming the immigration officer followed the steps set forth in 8 C.F.R. § 241.8(a), in that situation, "[t]he alien has no right to a hearing before an immigration judge." 8 C.F.R. § 241.8(a). If certain procedural requirements are met, *see* 8 C.F.R. § 241.8(a)(factual pre-requisites to reinstatement and requirement for considering statements made by and evidence in

the possession of the alien) and 8 C.F.R. § 241.8(b)(written notice and opportunity to contest determination), the individual is removable under the previous order of removal. 8 C.F.R. § 241.8(c); *Ortiz-Alfaro v. Holder*, 694 F.3d 955, 956 (9th Cir. 2012).

An individual subject to reinstated removal orders may not apply for asylum relief, *see* 8 U.S.C § 1231(a)(5), but if that individual expresses fear of returning to the country designated in that order, the person "shall be immediately referred to an asylum officer for an interview to determine whether the alien has a reasonable fear of persecution or torture." 8 C.F.R. § 241.8(e). "If the officer decides that the alien does have a reasonable fear of persecution or torture, the case is referred to an immigration judge . . . 'for full consideration of the request for withholding of removal only.'" *Ayala v. Sessions*, 855 F.3d 1012, 1015 (9th Cir. 2017) (citing 8 C.F.R. § 208.31(e)). If "the asylum officer decides that the alien has not established a reasonable fear of persecution or torture, then the alien is entitled to appeal that determination to an [immigration judge]." *Id.* at 1015–16 (citation omitted).

**B.     Release**

In general, "[e]xcept as otherwise provided in [§ 1231], when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days ( [ ] referred to as the "removal period")." 8 U.S.C. § 1231(a)(1)(A). "Under § 1231(a)(1)(B), the 90-day removal period begins on the latest of the following: (1) "[t]he date the order of removal becomes administratively final"; (2) "[i]f the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order"; or (3) "[i]f the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement." There is no suggestion in this record that Mr. Diaz's removal order became administratively final within the last 90 days under any of these provisions, so the Court concludes it "became final long ago." *See Alva v. Kaiser*, No. 25-CV-06676-RFL, 2025 WL 2419262, at *3 (N.D. Cal. Aug. 21, 2025) (concluding removal period began when removal order was reinstated).

"In general, [d]uring the removal period, the Attorney General shall detain the alien." 8 U.S.C. § 1231(a)(2)(A). Seemingly, despite the apparent mandatory language of this section,

6

detention is not required for non-criminal aliens. In any event, it is unclear under what authority Mr. Diaz was released in 2019 before the initial 90-day period expired. Nonetheless, he is no longer even arguably subject to mandatory detention under § 1231(a). Instead, where a noncitizen does not leave or is not removed within the 90-day removal period, the individual, "pending removal, shall be subject to supervision." 8. U.S.C. § 1231(a)(3). "As mandated by Congress, the default status after the 90-day removal period is therefore release on conditions, not detention." *Alva*, 2025 WL 2419262, at *3.

Noncitizens subject to a removal order may be released pursuant to 8 C.F.R. § 241.4 or 8 C.F.R. § 241.13.[6] *See Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 154 (W.D.N.Y. 2025). Once released, those same provisions also govern revocation of release. Apparently controlling here is 8 C.F.R. § 241.4(l), which provides in relevant part:

> (1) Violation of conditions of release. Any alien described in paragraph (a) or (b)(1) of this section who has been released under an order of supervision or other conditions of release who violates the conditions of release may be returned to custody. Any such alien who violates the conditions of an order of supervision is subject to the penalties described in section 243(b) of the Act. **Upon revocation, the alien will be notified of the reasons for revocation of his or her release or parole. The alien will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.**
>
> (2) Determination by the Service. The Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to Service custody an alien previously approved for release under the procedures in this section. A district director may also revoke release of an alien when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner. Release may be revoked in the exercise of discretion when, in the opinion of the revoking official:
>
> > (i) The purposes of release have been served;
> >
> > (ii) The alien violates any condition of release;
> >
> > (iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or

---

[6] 8 C.F.R. § 241.13, which concerns procedures for determining if there is a significant likelihood of removing a detained alien in the reasonably foreseeable future and directing release where there has been a finding of no significant likelihood, does not seem to be directly applicable here.

> (iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.

8 C.F.R. § 241.4(l)(emphasis added); *see also M.S.L. v. Bostock,* No. 6:25-CV-01204-AA, 2025 WL 2430267, at *8–9 (D. Or. Aug. 21, 2025) (finding revocation of release unlawful where the procedures of § 241.4(l)(1) were not timely satisfied).

It does not appear that Respondent is suggesting Mr. Diaz violated the terms of his supervision, so 8 C.F.R. § 241.4(l)(1) does not directly apply. Though DHS has asserted in other litigation that the notice requirements set forth in 8 C.F.R. § 241.4(l)(1) do not constrain revocation of release pursuant to § 241.4(l)(2), several district courts have rejected that argument. *See, e.g.*, *Ceesay*, 781 F. Supp. 3d at 163–4 & n. 25 (finding this argument "does not make sense" because paragraph (l)(2)(ii) includes violations of supervised release "as one of the possible reasons for revoking release" and requiring procedures of notice and an interview "regardless of the reason for the revocation"); *Zhu v. Genalo*, No. 1:25-CV-06523 (JLR), 2025 WL 2452352, at *6–7 (S.D.N.Y. Aug. 26, 2025) (finding such an interpretation would " result in imbalanced procedural safeguards for noncitizens redetained under section 241.4" because "noncitizens who are redetained because they violated the terms of supervision" would be entitled to more process than those who have met their obligations to report). The Court agrees with those decisions that the notice and interview requirements apply to anyone whose supervision has been revoked pursuant to 8 C.F.R. § 241.4(l)(1). Nothing in this record suggests Mr. Diaz was afforded the procedural protections of § 241.4 prior to his detention on August 8, 2025. *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) ["[O]nce passed through our gates, even illegally," noncitizens "may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law."]; *see also Mathews v. Diaz*, 426 U.S. 67, 77 (1976) ["Even one whose presence in this country is unlawful, involuntary, or transitory is entitled to that constitutional protection."]. It is also unclear whether an appropriate official acted to revoke Petitioner's release in this case. *See M.S.L.*, 2025 WL 2430267, at *8–9 (finding revocation of release unlawful where record did not demonstrate an appropriate official acted to revoke release under § 241.4(l)(2)).

## II. ANALYSIS

### A. Jurisdiction

#### 1. Habeas Corpus

Under 28 U.S.C. § 2241, the Court has the authority to determine a petition for writ of habeas corpus in which the petitioner asserts she is being held in custody "in violation of the Constitution or laws or treaties of the United States." "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).

Mr. Diaz seeks his immediate release from custody, which he contends violates the Constitution of the United States and the APA. (*See* Doc. 1.) Thus, he properly invokes the Court's habeas jurisdiction.

#### 2. Judicial Review under the INA

The INA limits judicial review in many instances. Though 8 U.S.C § 1252(g), precludes this Court from exercising jurisdiction over the executive's decision to "commence proceedings, adjudicate cases, or execute removal orders against any alien," there is no removal order at issue here. Thus, Court has the authority to review the termination of Mr. Diaz's release. *See Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (holding that § 1252(g) precludes judicial review only as to the three areas specifically outlined in the subsection); *see also Reno v. American–Arab Anti–Discrimination Committee*, 525 U.S. 471, 482 (1999).

### B. Preliminary Injunction

The standard for issuing a TRO is the same as the standard for issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n. 7 (9th Cir. 2001) (explaining that the analysis for temporary restraining orders and preliminary injunctions is "substantially identical"). When seeking a TRO or PI, plaintiffs must establish: (1) they are "likely to succeed on the merits" of their claims, (2) they are "likely to suffer irreparable harm in the absence of a preliminary injunction," (3) "the balance of equities tips in [their] favor" and (4) "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The moving party has the burden to "make a showing on all four prongs" of the *Winter*

1  test to obtain a preliminary injunction. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127,
2  1135 (9th Cir. 2011). Thus, the moving party has "the burden of persuasion." *Mazurek v.*
3  *Armstrong*, 520 U.S. 968, 972 (1997); *Hecox v. Little*, 104 F.4th 1061, 1073 (9th Cir. 2023). The
4  Court may weigh the request for a preliminary injunction with a sliding-scale approach. *Alliance*,
5  at 1135 (9th Cir. 2011). Accordingly, a stronger showing on the balance of hardships may support
6  the issuance of a preliminary injunction where there are "serious questions on the merits … so
7  long as the plaintiff also shows that there is a likelihood of irreparable injury and that the
8  injunction is in the public interest." *Id*. "A preliminary injunction is an extraordinary remedy
9  never awarded as of right." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 24 (2008).
10 Preliminary injunctions are intended to "merely to preserve the relative positions of the parties
11 until a trial on the merits can be held, and to balance the equities at the litigation moves forward."
12 *Lackey v. Stinnie*, 604 U.S. ___, 145 S. Ct. 659, 667 (2025) (citations omitted).

13  The status quo refers to "the last uncontested status which preceded the pending
14 controversy." *Tanner Motor Livery, Ltd. v. Avis, Inc*., 316 F.2d 804, 809 (9th Cir. 1963) (quoting
15 *Westinghouse Elec. Corp. v. Free Sewing Mach. Co*., 256 F.2d 806, 808 (7th Cir. 1958)). In the
16 Court's view, that is the status before Ms. Salazar was arrested and was still on parole. *See*
17 *Kuzmenko v. Phillips,* No. 25-CV-00663, 2025 WL 779743, at *3 (E.D. Cal. Mar. 10, 2025)
18 (granting a temporary restraining order requiring immediate release of the petitioner back to home
19 confinement from custody, as a restoration of the status quo).

20  Even if the Court's action here constitutes a mandatory injunction,[7] the evidence supports
21 that action. Mr. Diaz alleges he has suffered and is suffering violations of her substantive and
22 procedural due process rights and that his continued unlawful detention will impose on him and
23 his family serious injury if the injunction does not issue. The injunction issued here is on firm

---

[7] "A prohibitory injunction prohibits a party from taking action and preserves the status quo pending a determination of the action on the merits." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co*., 571 F.3d 873, 879 (9th Cir. 2009) (internal citations omitted). In other words, a prohibitory injunction "freezes the positions of the parties until the court can hear the case on the merits." *Heckler v. Lopez*, 463 U.S. 1328, 1333 (1983). A mandatory injunction, on the other hand, "orders a responsible party to 'take action.'" *Marlyn Nutraceuticals*, 571 F.3d at 879 (quoting *Meghrig v. KFC W., Inc*., 516 U.S. 479, 484 (1996)). Although subject to a higher standard, a mandatory injunction is permissible when "extreme or very serious damage will result" that is "not capable of compensation in damages," and the merits of the case are not "doubtful." *Id*. (internal citations and quotation marks omitted).

1  legal footing; due process clearly requires that Petitioner be given a hearing before her bond is
2  revoked. These injuries are not capable of redress through monetary compensation. Accordingly,
3  injunctive relief is appropriate even under the higher standard for mandatory injunctions.

   1. Likelihood of Success on the Merits

This first factor "is the most important" under *Winter*, and "is especially important when a plaintiff alleges a constitutional violation and injury." *Baird v. Bonta*, 81 F.4th 1036, 1041 (9th Cir. 2023). When an immigrant is placed into parole status after having been detained, a protected liberty interest may arise. *Young v. Harper*, 520 U.S. 143, 147-149 (1997)[8]. The Due Process Clause may protect this liberty interest even where a statute allows the immigrant's arrest and detention and does not provide for procedural protections. *Id.* (Due Process requires pre-deprivation hearing before revocation of preparole); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972).

*Morrissey* observed that parole allows the parolee to enjoy the same activities as those who have not been arrested and held in custody including, living at home, having a job, and "be[ing] with family and friends and to form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, "his condition is very different from that of confinement in a prison." *Id.* "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.* The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." *Id.* (quotations omitted). Therefore, a parolee possesses a protected liberty interest in their "continued liberty." *Id.* at 481–84.

DHS's failure to follow its own procedural regulations may constitute a due process violation. *Zhu*, 2025 WL 2452352, at *6–7 (noting that the government admitted in that case that the petitioner has a due process right to the procedures set forth in Section 241.4, though it contested which procedures applied to him). As *Zhu* explained, "[t]he Government has significant

---

[8] In *J.G.G.*, the Supreme Court re-affirmed that aliens are entitled to due process of law in deportation proceedings and must be given notice and an opportunity to be heard commensurate with the nature of the case. *Trump v. J. G. G.*, 604 U.S. ___, 145 S. Ct. 1003, 1006 (2025).

11

discretion to enforce the immigration laws and, indeed, to revoke [an] Order of Supervision. . . But it must do so consistent with the requirements of its own regulations and the Due Process Clause." *Id.*; *see also Ceesay*, 781 F. Supp. 3d 137, 157 (W.D.N.Y. 2025) ("[T]he mere fact that the government has the authority to detain someone does not mean that it may do so in any manner it chooses, without affording due process.").

The Court acknowledges that the statute indicates that, an alien subject to a reinstated order of removal "shall be removed under the prior order ***at any time*** after the reentry." 8 U.S.C. § 1231(a)(5). But, as noted above, this does not mean that DHS may exercise its discretion in a manner that is inconsistent with constitutional requirements. As the *M.S.L.* court explained:

> Government agencies are required to follow their own regulations. *United States ex rel Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954); *Nat'l Ass'n of Home Builders v. Norton*, 340 F.3d 835, 852 (9th Cir. 2003). Courts have found that when ICE fails to follow its own regulations in revoking release, the detention is unlawful and the petitioner's release must be ordered. *See Ceesay*, 2025 WL 1284720, at *20-21; *Rombot v. Souza*, 296 F. Supp.3d 383, 387 (D. Mass. 2017). More fundamentally, ICE's failure to provide Petitioner with a timely Notice of Revocation or conduct an informal interview until nearly a month after taking her into custody is a grave violation of Petitioner's due process rights in that they deprived her both of meaningful notice and an opportunity to be heard.

*Id.* at *11–*12.

Addressing a similar situation where an alien's release was revoked pursuant to 8 C.F.R. 241.4(l), the court in *Perez-Escobar v. Moniz*, No. 25-CV-11781-PBS, 2025 WL 2084102, at *2 (D. Mass. July 24, 2025), reasoned:

> "[T]he essential requirements of procedural due process include adequate notice and an opportunity to be heard 'at a meaningful time and in a meaningful manner.' " *Aponte-Rosario v. Acevedo-Vila*, 617 F.3d 1, 9 (1st Cir. 2010) (quoting *Amsden v. Moran*, 904 F.2d 748, 753 (1st Cir. 1990)); *see Jimenez v. Cronen*, 317 F. Supp. 3d 626, 634 (D. Mass. 2018) (explaining that the "[f]undamental features of procedural due process are fair notice of the reasons for the possible loss of liberty and a meaningful opportunity to address them"). Likewise, under DHS's regulation, "in order to revoke conditional release, the Government must provide adequate notice" and give the noncitizen "an opportunity to respond to the reasons" offered for the revocation. *Noem v. Abrego Garcia*, ––– U.S. –––, 145 S. Ct. 1017, 1019 (2025) (statement of Sotomayor, J.) (quoting 8 C.F.R. § 241.4(*l*)(1). ICE's conclusory explanation for revoking Petitioner's release did not offer him adequate notice of the basis for the revocation decision such that he could meaningfully respond at the

>   post-detention "informal interview." 8 C.F.R. § 241.4(*l*)(1); see *Mard v. Town of Amherst*, 350 F.3d 184, 189 (1st Cir. 2003) (explaining that "[t]he purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for," the opportunity to be heard (quoting *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 14 (1978))).

In *Perez*, the petitioner received a Notice of Revocation of Release, stating generically that officials had reviewed his "official alien file" and determined "there are changed circumstances in your case," including that he was "subject to an administratively final order of removal" and that DHS "determined the purpose of your release has been served and it is appropriate to enforce the removal order." *Id*. at *1. This notice was deemed insufficient for purposes of the regulation and due process. *Id*. at *2. Considering the insufficient notice, the petitioner was ordered released.

Here, on the present record it does not appear that petitioner was afforded appropriate notice and an opportunity to be heard in compliance with the regulation or by any other means. Thus, he is likely to succeed on his due process claim.[9]

Respondents' primary argument to the contrary focuses on the fact that caselaw indicates that Due Process is not offended by the summary procedures related to reinstatement of an original removal order. (See Doc. 18 at 5.) For example, Respondents correctly cite *Lattab v. Ashcroft*, 384 F.3d 8, 20-21 (1st Cir. 2004), in which the First Circuit found that the summary reinstatement process set forth at 8 U.S.C. § 1231(a)(5) did not violate Due Process because the petitioner did not dispute he previously self-deported or reentered the country illegally, thereby "admit[ing] all the facts necessary to warrant reinstatement of the original deportation order" and therefore that there was no prejudice caused by the challenged procedure. That simply is not the issue presented here. This case is not about whether the removal order can be reinstated, but, rather, whether Mr. Diaz can be re-detained after release pending the completion of any adjustment or withholding processes that may remain available to him.  Irreparable Harm

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 247, 272 (1976)). Moreover, "[t]he Ninth Circuit has recognized

---

[9] The Court declines to address his other claims at this time.

13

'irreparable harms imposed on anyone subject to immigration detention' including 'the economic burdens imposed on detainees and their families as a result of detention.'" *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017); *Leiva-Perez v. Holder*, 640 F.3d 962, 969-970 (9th Cir. 2011) (the inability to pursue a petition for review may constitute irreparable harm). The evidence here demonstrates that Mr. Diaz's family is suffering because of his absence and that he has made nothing but a positive impression on his employer and community during his time on release.

### 2. Balance of the Harms/Public Interest

Because the interest of the government is the interest of the public, the final two factors merge when the government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). The Court agrees by analogy with the analysis of *Pinchi v. Noem*, No. 5:25-CV-05632-PCP, ___ F. Supp. 3d ___, 2025 WL 2084921, at *3 (N.D. Cal. July 24, 2025), and finds it correctly addresses the situation here:

> "[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." [*Jorge M. F. v. Wilkinson*, No. 21-cv-01434, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021)] (cleaned up) (quoting *Ortiz Vargas*, 2020 WL 5074312, at *4, and then quoting *Hernandez*, 872 F.3d at 996); see also *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). Without the requested injunctive relief, Petitioner-Plaintiff faces the danger of significant health consequences and deprivation of her liberty. Yet the comparative harm potentially imposed on Respondents-Defendants is minimal—a mere short delay in detaining Petitioner-Plaintiff, should the government ultimately show that detention is intended and warranted. Moreover, a party "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).

In addition, there appears to be no dispute that there is no evidence that Mr. Diaz poses a risk of flight or a danger to the community. For these reasons and those set forth in *Pinchi*, the Court concludes that the balance of the equities and public interest weigh in favor of Ms. Salazar.

### 3. Bond

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages

sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Court has "discretion as to the amount of security required, if any," and it "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (citation modified). Because "the [Government] cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations," *Zepeda*, 753 F.2d at 727, the Court finds that no security is required here.

## CONCLUSION AND ORDER

For the foregoing reasons, the Court **ORDERS:**

1. Petitioner's Motion for Temporary Restraining Order (Doc. 6) is converted to a Motion for Preliminary Injunction, and it is **GRANTED**.

2. Mr. Diaz **SHALL** be released **immediately** from Respondents' custody. DHS **SHALL NOT** impose any additional restrictions on him, such as electronic monitoring, unless that is determined to be necessary at a future pre-deprivation/custody hearing.

3. Respondents are **PERMANENTLY ENJOINED AND RESTRAINED** from re-arresting or re-detaining Mr. Diaz absent compliance with constitutional protections, which include, at a minimum, strict compliance with the requirements of 8 C.F.R. 241.8 and the form of notice and opportunity to be heard prescribed in 8 C.F.R. § 241.4(l).[10]

4. Based upon the parties' waiving their right to file further briefs, the Court takes the merits of the habeas petition under submission.

IT IS SO ORDERED.

Dated:   **September 5, 2025**

*Jennifer L. Thurston*
UNITED STATES DISTRICT JUDGE

---

[10] Because of this conclusion, the Court finds it unnecessary to address Petitioners' alternative requests, including the request that the Court declare that their failure to provide Respondent with a credible fear interview violates Due Process. (*See* Doc. 1 at 21.)

15